IN THE CIRCUIT COURT OF MACON COUNTY
FOR THE SIXTH JUDICIAL CIRCUIT
DECATUR, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS
        PLAINTIFF,

CASE NO. 94-CF-482

VS.

JAMES DELSO,
        DEFENDANT.

## PETITION for POST-CONVICTION RELIEF SECOND PETITION

Now comes, James Delso, por-se, comes before this court, pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1) Illinois Complied Statutes.

In support of this petition defendant states as follows:

1) That he was convicted of the offense of First Degree Murder after a guilty plea before Judge Jerry L. Patton.

2) That he was sentenced to a term of 33yrs. in prison.

3) That on Nov.7,1994 petitioner filed a timely petition for post-conviction relief in the circuit court of macon county.

4) That on Dec.2,1997 said petition was dismissed as untimely.

5) That on Dec.29,1997 petitioner filed a timely Notice of Appeal.

6) That in the month of Oct. of 1999. said petition was reversed and remand to the circuit court for further proceedings as being timely filed.

7) That on Sept.7,1999 petitioner filed an Amendment to petitioner pro-se post-conviction petition that was filed on Nov.7,1997.

8) That during the month of Dec.1999 said post-conviction was dismissed as frivolous and/or patently without merit.

9) That during the month of Dec.1999 said Amendment was dismissed for not alleging a Constitutional violation.

10) That petitioner states that his Amendment was deficient in not bringing sufficent facts/ or bringing the "gist" of a violation.

EXHIBIT A

13) That the reason for this second post-conviction is because of newly discovered evidence that will prove actual innocence.

14) That this is a colorable petition.

13) That petitioner also contends that the issues that set forth in this petition are constitutional violation and the reason they were not set forth in his first petition is he had to study under unbelieveable condition and circumstances.

14) Petitioner's conviction rest upon an unreasonable application.

15) Petitioner contends that he is innocence of this crime.

16) Please see attached arguments, memorandum of law in support for post-conviction relief,and affidavit for defendant's allegation of constitutional violation.

*James Delso*
S/S JAMES DELSO

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 25 DAY OF July 2000.

*Sandra Schwab*
NOTARY PUBLIC

"OFFICIAL SEAL"
SANDRA SCHWAB
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/8/2001

C.9

# ISSUE PRESENTED FOR REVIEW

ISSUE ONE: WHETHER PETITIONER WAS DENIED DUE PROCESS OF LAW, EQUAL PROTECTION, AND EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE 5TH, 6TH, AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION AND ARTICLE 1, SECTIONS 2, 6, AND 8TH OF THE ILLINOIS CONSTITUTION WHEN HIS ATTORNEY FAILED TO INVESTIGATE OR INTERVIEW SERVERAL WITNESSES WHO WOULD HAVE TESTIFIED THAT THE DEFENDANT DID NOT COMMIT THE CRIME, BUT THAT THE STATE'S WITNESS DID.

1). That on 4-26-94 Charles Talley advised officer Beck that he heard while in jail that "Cat Daddy" (ORLANDO Allen), STATE'S witness had possibly set James Talley up. (see exhibit A)

2). That on 4-26-94 Lether Talley advised officer Beck that she had heard that "Cat Daddy" (state's witness) was responsible for the shooting death of James Talley. (see exhibit A)

3.) That Lether Talley stated that James Talley and "cat daddy" were friends and that she had heard through the grapevine that some drugs had turned up missing from "cat daddy" residence. (see exhibit A)

4.) That Lether Talley stated she heard that "cat daddy" believed that James Talley was responsible for the theft of these drugs (see exhibit A).

5.) That on 4-28-94 Dan Blunt advised officer Beck that he described the B/M as being approximately 5'8", wearing either a dark tee-shirt or a dark jacket. (see exhibit B).

6.) That on 4-28-94 Dan Blunt was shown a list of photos however indicated he was approximately a half block away and did not feel he would be able to identify anyone. (see exhibit A)

7.) That on 5-12-94 Marion Reed (lucky) advised officer Beck that he had been asking around who was responsible for killing James Talley. (see exhibit C)

8.) That Marion Reed stated that the reason he was asking was because he was a cousin to James Talley. (see exhibit C)

NT:

9.) That Marion Reed stated that shortly after asking around about who was responsible for killing James Talley, "Cat Daddy" (Orlando Allen) saw lucky (Marion Reed) and began shooting at him. (see exhibit C)

10.) That on 4-25-94 Lether Talley advised officer Montgomery that she had a lot of information that she needed to relay to me. (see exhibit D)

11.) That Lether Talley stated that there would be a B/F who would remain anonymous, who would give officer Montgomery some important information this evening. (see exhibit D)

12.) That on 4-25-94 reporting officer Montgomery spoke with said B/F, this B/F stated that "Cat Daddy" was the subject who killed James Talley. (see exhibit D)

13.) That the B/F stated that she has pertinent information, and this information should lead investigators to "Cat Daddy. (see exhibit D)

14.) That the B/F stated that by tomorrow afternoon, she may have enough information which would positively link "Cat Daddy" to the shooting, and that officer Montgomery may even retrieve the gun which was involved in the shooting. (see exhibit E)

15.) That the B/F stated that all of her information concerning to the Talley case will point directly to "Cat Daddy". (see exhibit E) E )

16.) That on 5-29-94 Torre Wilson stated that as he was in the streets he saw Talley talking to the unknown B/M who was standing with "Cat Daddy". (see exhibit F)

17.) That Torre Wilson stated that Talley was talking with the unknown B/M and that "cat daddy" was standing approximately 5 feet away from them. (see exhibit F)

18.) That Torre Wilson stated on the following day 5-29-94, that he spoke with "cat daddy" about what he had seen and the only thing Cat Daddy said is that Wilson should not "FUCK WITH IT". ( SEE EXHIBIT G) G

19.) That Torre Wilson stated that he had heard that "Paducah" - (Anthony Hobson) had given some drugs to James Talley to sell. (see exhibit G)

(2)

C-11

20.) That Torre Wilson stated that he heard that Talley and Cat Daddy had smoked up all the crack cocaine and that Talley was murdered because of this. (see exhibit G)

21.) Wilson stated that he heard that Cat Daddy had set James Talley up to be murdered and that he was not going to be killed. (see exhibit G)

22.) That on 5-8-94 Orlando Allen stated that Talley came into his apt. and went upstairs. (see exhibit H)

23.) That Allen stated that he was lying down with Wiggins and that Talley stayed for 10-15 minutes talking with both of them. (see exhibit H)

24.) That Allen denied taking a polygraph test concerning the murder of Talley because he was a nervous person. (see exhibit I)

25.) Defendant contends that if these meritious issue was argued there is a strong probability that he would "never" have plead guilty.

ISSUE TWO: WHETHER PETITIONER WAS DENIED DUE PROCESS, EQUAL PROTECTION OF THE LAWS WHEN HIS COUNSEL FAILED TO PROPERLY IMPEACH STATE'S WITNESSES REGARDING THERE PRIOR INCONSISTENT STATEMENTS VIOLATING HIS FIVE, SIXTH, AND FOURTEENTH AMENDMENT RIGHT AS GUARANTEED BY THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 2, 6, AND 8 OF THE ILLINOIS CONSTITUTION.

1.) That on 5-8-94 Etta Wiggins stated that on the day Talley was killed that she had not been well and had laid around most of the day. (see exhibit J)

2.) Wiggins stated that there had been no one at the house and that she and Allen were upstairs in bed watching T.V. (see exhibit J)

3.) Wiggins stated she went to sleep, but was awakened by the sound of gunshots. (see exhibit J)

4.) Wiggins stated on 5-8-94 that she did not get out of bed and neither did Allen; both stayed where they were and did not look out the window. (see exhibit J)

5.) Wiggins stated that she knew James Talley and that Talley had not been by the house on the date of 4-24-94. (see exhibit J)

6.) Wiggins stated that as far as she knows that Allen was home all night.(see exhibit J)

7.) Wiggins stated that since she was not feeling well and she did sleep some on that date and that Allen might have left while she took a nap.(see exhibit J)

8.) That on 5-8-94 Wiggins stated that she knows no one by the nickname of Whammi.(see exhibit J)

9.) That on 7-17-94 during the sentencing hearing of the Attempt Murder Wiggins was on direct examination, and the following was made:  SENTENCING HEARING TRANSCRIPT:   PAGE 15 TO 17

Q: Now, do you recall what time you first went to that apartment that day?

A: Around three in the afternoon.

Q: And during the course of that day, did you see someone you know by the name of james talley?

A: Yes.

Q: You call him Talley; is that correct?

A: Yes.

Q: About what time was it you first saw Talley that day?

A: Around 3:30; something like that.

Q: Now, during the course of that day, actually in the evening, did you have occasion in the evening to see about 10:00 o'clock or 10:30, some where around there, a person that you know by the nickname Whami?

A: Yes.

Q: At the time that you saw Whami come up into the apartment, who all was there?

A: Myself, Orlando, Talley, and Billy.

Q: At the time you saw Whami come into the apartment, was anybody with him?

A: Yes.

Q: Who was with him?

A: L.A a.k.a. Marcus Adams.

10.) That on 4-24-94 Orlando Allen stated that he was upstairs in bed and he heard three shots and looked outside.(see exhibit L)

(4.)

P.12

11.) That Orlando Allen stated that he knew the subject on the ground by the name "T" and that was all.(see exhibit L)

12.) That on 5-8-94 Allen stated that he does go by the the nickname of "Cat Daddy".(see exhibit H)

13.) Allen stated that on the day Talley's murder, Talley had been at his house at approximately 1500hrs.(see exhibit H)

14.) That on 6-2-94 Orlando Allen advised police that two males did not escort James Talley out of his apt.(see exhibit M)

15.) That Allen stated that no one was at his apt. but him and Wiggins. (see Exhibit M)

16.) That Allen stated that Lewis and Talley arrived at the apt. as well as Billy Hammer.(see exhibit N)

17.) Allen stated that everyone in the apt. was smoking crack cocaine.(see exhibit N)

18.) Allen stated that someone asked who was it at the door and the person responded by saying L.A. (Marcus Adams).(see exhibit N)

19.) That Allen stated that he did not know anyone by the nickname of Whami.(see exhibit I)

20.) Defendant contends that if this meritious issuse was argued there is a strong probability that he would never have plead guilty.

ISSUE THREE: WHETHER PETITIONER WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF THE LAWS, IN VIOLATION OF THE 5,AND 14TH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 2,AND 8 OF THE ILLINOIS CONSTITUTION WHEN THE STATE'S ATTORNEY FAILED TO DISCLOSE EXCULPATORY (MATERIAL) EVIDENCE.

1.) That Wiggins stated that no one was at the house but her and Orlando Allen.

2.) That Wiggins stated that she knows no one by the name Whami.

3.) That Allen stated that no one was at the house but Wiggins.

4.) That Allen stated that he knows no one by the name Whami.

5.) That Torre Wilson stated that Talley was talking with the unknown B/M and that cat daddy was standing 5 feet away from them.

(5)

C-14

PROTECTION OF THE LAWS, IN VIOLATION OF THE 5, 14T AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 2, AND 8 OF THE ILLINOIS CONSTITUTION WHEN THE TRIAL COURT FAILED TO COMPLY WITH THE GUILTY PLEA ADMONISHMENTS.

1.) Trial judge failed to admonish the defendant that he has the right to plead not guilty, or to persist in that plea if it has already been made.

2.) Trial judge failed to determine whether the plea was made of any promises.

3.) Trial judge failed to admonish the defendant the fact that the court is required to consider any appliacable sentencing guidelines but may depart from those guidelines under some circumstances and when applicable, that the court may also order the defendant to make restitution to any victim of the offense.

4.) Trial judge failed to explain to the defendant the elements or meaning of "intent" for which he was pleading guilty to.

5.) Trial judge failed to determine whether there is a factual basis.

6.) Defendant contends that if this meritious was argued there is a strong probability that he would not have plead guilty.

ISSUE FIVE: WHETHER PETITIONER WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF THE LAWS, IN VIOLATION OF THE 5, 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 2, AND 8 OF THE ILLINOIS CONSTITUTION WHEN THE JUDGE CONSIDERED ANOTHER CRIME THAT THE PETITIONER WAS NOT CONVICTED OF AS EVIDENCE AT THE ATT. MURDER SENTENCING HEARING WHEN THE COMMENT'S OF THE JUDGE WAS PREJUDICIAL.

Trial judge heard evidence of another crime.(see newspaper clipping)

2.) Trial judge stated that the evidence he heard today, this court believe that James Delso was involved in the shooting of James Talley.(see newspaper clipping)(Ex. O)

3.) Defendant contends that if this meritious issue was argued there is a strong probability that he would not have plead guilty

(6)

C-15

ISSUES NUMBER #12 IONER WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF THE LAW, IN VIOLATION OF THE 5, 14 AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 2, AND 8TH OF THE ILLINOIS CONSTITUTION WHEN THE TRIAL JUDGE DENIED HIM A FAIR HEARING ON HIS MOTION.

1. Petitioner put motion in for change of venue which same judge heard and denied. (see exhibit P)

2.) Petitioner put motion in for change of judge, which same judge heard and denied. (SEE EXHIBIT P)

3.) Defendant contends that if this meritious issue was argued there is a strong probability that he would never have plead guilty.

ISSUE SEVEN: WHETHER PETITIONER WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF THE LAWS, VIOLATION OF THE 5, AND 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 2, AND 8TH OF THE ILLINOIS CONSTITUTION WHEN THE TRIAL JUDGE SUBMIITTED INTO EVIDENCE WITNESSES WHO HAVE RECEIVED IMMUNITY FOR HIS TESTIMONY AND WHO ADMITTED TO BEING UNDER THE INFLUENCE OF DRUGS.

1.) That Marcus Adams was cgarged with First Degree Murder for killing James Talley. (see criminal History Data)

2.) That on 6-3-94 Marcus Adams received immunity for his testimoy. (see order of immunity sheet) (SEE EXHIBIT R)

3.) That during the month of August Etta Wiggins admitted to smoking crack cocaine on the night James Talley was murdered. (see sentencing hearing transcripts: Cross-Examination ) (SEE

4.) That during the month of August Billy Hammer admitted to smoking crack cocaine on the night James Talley was murdered. (see sentencing hearing transcripts: Cross-Examination)

5.) That Orlando Allen admitted to smoking crack cocaine on the night James Talley was murdered. (SEE EXHIBIT N)

6.) That Alvin Lewis admitted to smoking crack cocaine on the night James Talley was murdered. (SEE EXHIBIT N)

7.) Defendant contends that if this meritious issue was argued there is a strong probability that he would not have plead guilty.

(7)

C-16

ISSUE EIGHT: WHETHER PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE 6TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 6, OF THE ILLINOIS CONSTITUTION, WHEN HIS ATTORNEY OF RECORD COERCE HIM INTO PLEADING GUILTY, WHERE THE EVIDENCE WOULD HAVE SHOWN THAT HE DID NOT COMMIT THE CRIME, WHICH FURTHER PROVES ACTUAL INNOCENCE.

1.) That the evidence pointed at Orlando Allen. (SEE EXHIBIT A,C,D,E,F, AND G)

2.) That the evidence consisted of witness who identify Orlando Allen as the offend who committed the crime. (see ex.a,c,d,e,f,

3.) That during the month of Nov.1994 defendant met with attorney Brinkoette, who advised defendant that he should plea guilty because the evidence is pointing at him.

4.) That said Attorney Brinkoette told me during the meeting that I don't have a chance in beating this case.

5.) That during this meeting with attorney Brinkoette I advised him that I did not commit this crime.

6.) That during this meeting with Attorney Brinkoette he advised me that we will not have a fair trial in this court room.

7.) That during this meeting att. Brinkoette told me that pleading guilty would be best for me because the state's attorney is seeking to give me a 100yrs. if I go to trial.(see newspaper clipping)

8.) Defendant contends that he would not have plead guilty if he was not feared of his attorney advice.

ISSUE NINE: WHETHER PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE 6TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 6 OF THE ILLINOIS CONSTITUTION WHEN HIS ATTORNEY OF RECORD FAILED TO COMPLY WITH SUPREME COURT RULES.

1.) That on Nov.14,1994 I advised att. Brinkoette to file a motion to withdraw guilty plea and vacate sentencing.

2.) That att. Brinkoette failed to file with the court a certificate stating that he has consulted with the defendant either by mail or in person to acertain his contention of error in the sentence or the entry of the plea of guilty.

C-17

OF COUNSEL, AS AFFORDED HIM THROUGH THE 6TH AND 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 2, 6 AND 8 OF THE ILLINOIS CONSTITUTION WHERE ATTORNEY BRINKOETTE REFUSED TO WITHDRAW PETITIONER GUILTY PLEAD AND ARGUE MERITIOUS ISSUES THAT COULD HAVE PROVEN PETITIONER INNOCENCE.

~~SEE CASELAW~~.

1.) Latasha Talley who advised officer Beck that she had heard an individual who went by the name of "Waymie" a.k.a Wayne Tennison.

2.) Latasha Talley also indentified another individual who went by the nickname of "Whammy" or "Wham Wham" that she knew of as Wayne Wilder. (see exhibit S)
That Marcus Adams received immunity for his testimony.

3.) Charles Talley said that he had heard while in jail that "Cat Daddy" had possibly set James Talley up.

5.) Lether Talley said that she had heard that "Cat Daddy" was responsible for the shooting death of her brother, James Talley.

6.) That Marion Reed was shot at by "Cat Daddy" for asking around who was responsible for killing James Talley.

7.) That an anonymous called who called from Lether Talley house said that "Cat Daddy" was the subject who did the kill James Talley.

8.) That the anonymous caller said that she had information that would positively link "Cat Daddy" to the shooting and may even retrieve the gun which was involved in the shooting.

9.) That Torey Wilson said that Talley was talking to and unknown b/m who was standing with "Cat Daddy".

10.) That Mr.Wilson said that "Cat Daddy" ran to the west of his apartment and then south.

11.) Wilson stated that he spoke with Cat Daddy adout what he had seen and "Cat Daddy" advised him not to "fuck with it".

12.) Defendant contends that if this meritious issue was argued there is a strong probability that he would not have plead guilty

(9)

C-18

ISSUE 7. WHETHER PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS AFFORDED HIM THROUGH THE 6TH, AND 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 2, 6, and 8 of the Illinois Constitution Where ATTORNEY BRINKOETTE FAILED TO INVESTIGATED OR INTERVIEW LATASHA TALLEY ADOUT PEOPLE WHO WENT BY THE NAME WHAMMY OR WAYNIE.

1.) That on 4-26-94 Latasha Talley was interviewed by officer Beck and was asked if she had any idea who might go by the nickname of "Whammy or Waynie". (see exhibit S)

2.) That Latasha Talley advised officer Beck that she had heard an individual who went by the name of "Waymie" and indentified him as possibly Wayne Tennison. (see exhibit S)

3.) Latasha Talley described this Tennison subject as being a b/m, approximately 18yrs., 5'7", 150 pounds. (see exhibit S)

4.) That Latasha Talley indentified another individual as Wayne Wilder who went by the nickname of "Whammy" or Wham Wham" that she knew of. (see exhibit T)

5.) Defendant contends that if this meritious issue was argued there is a strong probability that he would not have plead guilty.

6.) Defendant contends that his att. Brinkoette failed to check the crime stopper call sheet. (see exhibit U)

    Wherefore, Petitioner, James Delso, respectfully request and prays that the judgment and sentence of the trial court be set aside, and that a new trial be ordered.

S/S *James Delso*
James Delso #B-35965
P.O. Box 112
Joliet, Ill. 60434

C-19