Kankakee Police Officer Larry O'Senga testified to having obtained People's Exhibit No. 71, which included three checks and a Federal Express envelope, from from the mother of John Hines. (R. 2600)  Two of the checks were payable to Moore's girlfriend Tammy Saif in the amounts of $1500 and $2000, and listed Ed Moore as the remitter.  One check payabale to Barb Eldrich for $1500 did not indicate the remitter.   Moore's brother Kevin identified Eldrich as a former girlfriend of Moore.  (R. 2664)

Katherine Foust of the Gary/Wheaton Bank and Kim Beatty of First Midwest Bank in Morris testified that Ed Moore's accounts at their respective banks were closed because of overdrafts.  (R. 1313, 1323)  Each testified that Moore listed his address as 4149 Elm Street, Downers Grove.  Sgt. Kaupas of the Illinois State Police searched that address pursuant to a warrant and found two money orders payable to Tammy Saif in the amount of $700 each. (R. 2677)  The remitter listed on those money orders was "Ken Moore."

The jury found Ed Moore guilty on all counts.  (R. 3319)

<u>Eligibility</u>.  The prosecution sought the death penalty based on Moore's having committed murder in the course of five of the felonies enumerated in Ill.Rev.Stat., 1991, Ch. 38, §9-1(b)(6). (R. 3352)  Defense counsel requested to argue jury nullification to the jury.  (R. 3365)  The trial court refused defense counsel's nullification argument.  (R. 3366)  The jury found Moore eligible for the death penalty on all five counts under §9-1(b)(6).  (R. 3376)

<u>Aggravation</u>.  Edward Massaro, Ed Moore's father testified that Ed was in special education classes from second through eighth grades.  (R. 3399)  In 1972, Ed was placed as a minor in need of

supervision. At the age of 14 or 15, Ed attempted to pawn a ring that did not belong to him. (R. 3403) Massaro testified to coming home once when Ed was 22 and finding Ed there with a police oficer. A coin collection and some money were missing. Another of Massaro's children later told him that Ed had stolen those things. Massaro changed his name from Moore because Ed had stolen and cashed his social security check. (R. 3410) Ed was diagnosed at Michael Reese Medical Center as suffering from a mental disability. (R. 3422) Massaro denied having abused Ed Moore.

Hinsdale police officers identified certified copies of conviction that showed that Moore was convicted of a battery against a 15-year-old girl in 1976 and residential burglary in 1983. (R. 3447, 3460, 3474) Hinsdale Police Officer James Eccardt further testified that Ed Moore admitted committing a 1976 burglary in which coins, cash, and jewelry were taken. (R. 3454) Westmont Police Officers Randy King and James Schar testified to an incident in October, 1981, in which Ed Moore abducted his child from the child's mother and later called the mother to harass her and threaten to injure or kill the child if she did not meet Moore. (R. 3464, 3470) The child was recovered the following day at the apartment of Moore's brother by Officer Schar. (R. 3468, 3471) Westmont Police Officer Vincent Musial testified that Ed Moore stopped payment on a check in 1985. (R. 3476)

Illinois State Police Officer Kevin Shaugnessy testified to an incident in 1989 in which Moore forced a 15-year-old girl to have intercourse with him on I-294. (R. 3479) No charges were filed. (R. 3481) Downers Grove Police Officer Tim Reinhart testified that Moore was convicted of criminal damage to property in 1982. (R.

-19-

C . 000

3503)   Reinhart also testified that a complaint was filed against Moore for deceptive practices in 1989.  (R. 3504)

Elmhurst Police Officer John Hybl testified that Moore and another man broke a window at a Walgreen's Store in December, 1974, and later returned and fought with the store's manager.  (R. 3507) Charges were dismissed.  (R. 3509)  Elmhurst Police Officer Mel Melitell testified that Moore admitted stealing a vehicle in 1974, and Melitel testified to having investigated a complaint that Moore sprayed chemicals in the face of a woman in 1976.  (R. 3511)  Wheaton Police Officer Terry Bauer testified to having investigated a complaint in 1989 that Ed Moore stole a check and jewelry from a woman after a varnishing job.  (R. 3513)  Billie Jo Hines testified that in May, 1991, Moore said that he was painting the home of some wealthy people and that he "ought to rob the bitch."  (R. 3499)

Grundy County Sheriff's Deputy Terry Marchetti testified that Moore attacked two correctional officers in New York prior to his extradition to Illinois, and that he threatended to kill a Grundy County correctional officer for shutting the phone off.  (R. 3517-18)  Grundy County Probation Officer Lou Ann Ichmael testified that Moore received a ticket at the Danville Correctional Center for threatening to "shank" another inmate.  (R. 3532)   Ichmael testified that Ed Moore was an abused child from the age of 13 months.  (R. 3544)

Mitigation.  Four of Ed Moore's siblings and his uncle testified to the abuse that Moore suffered as a child.   Phil Libera, a former Chicago police officer and the uncle of Ed Moore, testified to having witnessed numerous beatings administered to Ed Moore by his father, including a bloody beating Ed received in his

crib at the age of 2 1/2 months.    (R. 3566)    Libera recounted beatings Ed received when he was 13 months old and an Easter beating which resulted in Ed's eyes being puffy and having marks all over his face.    (R. 3569)    Libera unsuccessfully attempted to adopt Ed when Ed was 11 years old.    (R. 3571)

Ed's sisters Cynthia and Katherine testified to beatings Ed received from his father.    (R. 3592, 3601)    Both women recounted Ed having been stabbed by his father with a knife when he was 23 years old, and that Ed was much smaller than their father.    (R. 3597, 3603)    Katherine saw Ed being beaten by his father when Ed was 8 years old.    Cynthia testified that the other children were not abused as early as the age of 2 months, as Ed was.    (R. 3597)

Kevin Moore described his father's beatings of his brother Ed as too numerous to count.    Kenneth Moore numbered the beatings in the "hundreds" or "thousands."    (R. 3609, 3618)    Kenneth described an incident when Ed was nine or 10 years old in which their father knelt on Ed's arms and slapped him with both hands in the face. (R. 3617)    Kevin described an incident when Ed was 14 or 15 years old in which his father beat Ed so badly about the face that his eyes were swollen shut.    (R. 3610)

The jury returned a death verdict.    (R. 3653)    Ed Moore's post-trial motion was denied after a hearing on May 28, 1993.    (R. 3710)    Notice of appeal was filed on June 23, 1993.    (C. 839)

On February 2, 1994, the Illinois Supreme Court granted Mr. Moore's motion for remand to the circuit court for consideration of a supplemental post-sentencing motion.    (C. 846)    On February 9, 1994, Mr. Moore filed the supplemental post-sentencing motion.    (C. 848)    That motion was denied at a hearing on April 14, 1994.    (R.

3776-3809)    The Illinois Supreme Court heard oral argument on the direct appeal on March 15, 1995.   No opinion has yet been filed.

C · 903

POST-CONVICTION CLAIMS

I.

ED MOORE WAS DENIED HIS RIGHT UNDER THE SIXTH AND
FOURTEENTH AMENDMENTS TO EFFECTIVE ASSISTANCE OF COUNSEL
WHERE HIS TRIAL COUNSEL FAILED TO OBTAIN AN EXPERT
EVALUATION OF FINGERPRINTS ATTRIBUTED BY PROSECUTION
EXPERTS TO ED MOORE THAT WERE DISCOVERED ON DUCT TAPE
REMOVED FROM THE VICTIM AND ON A KEY TAG ATTACHED TO A
CAR KEY FOUND IN THE IGNITION OF THE VICTIM'S CAR.

At trial, Grundy County Sheriff's Deputy Terry Marketti
identified People's Exhibit 1 as an envelope containing duct tape
and head hair removed from Judy Zeman at Morris Hospital, which he
gave to Officer Mel Trojanowski. (R. 2742-44) Forensic scientist
Michael Murphy testified that he received the duct tape contained
in People's Exhibit 1 from Officer Mel Trojanowski on July 9, 1991.
(R. 2918) Murphy testified that the tape bore two latent prints
that matched the prints taken from Ed Moore. (R. 2923)

Trojanowski testified that People's Exhibit 22 was a key ring
bearing two keys and a tag that were found in the ignition of the
victim's car, which was found against a tree with the motor running
near the Zeman residence at the time Judy Zeman was found on her
driveway. (R. 1544) The victim's daughter testified that those
keys hung next to the garage door in the Zeman residence. (R.
2770) Murphy testified that no latent prints were found on the
keys themselves, but that one latent print matching Ed Moore's left
little finger was found on the tag. (R. 2923) Murphy testified on
cross-examination that another latent print suitable for comparison
was found on the tag, but could not be matched to any other known
print. (R. 2939)

In closing argument, the prosecution argued that Ed Moore's
fingerprints matched the prints found on the key tag and the duct

tape.  (R. 3239, 3242)  The prosecution again referred to that evidence in its rebuttal argument as well.  (R. 3278, 3287)

Mr. Moore moved pro se for the appointment of an expert fingerprint examiner (C. 834), which the trial court denied at the hearing on Mr. Moore's Post-Sentencing Hearing.  The trial court informed Mr. Moore that the request for a fingerprint expert was an issue to be raised in a Post-Conviction Petition, and the court denied Mr. Moore's pro se motion.  (R. 3707-3712)

Mr. Moore's trial counsel never subjected the latent prints on the key tag or duct tape to independent analysis.  In his Affidavit, attached to this Petition as Petitioner's Exhibit 1, Mr. Moore states that prior to trial he requested that his attorney, Thomas Royce, seek independent evaluation of the prints found on those two items.  Mr. Royce failed to so.  Mr. Moore's appellate attorney, Timothy M. Gabrielsen, spoke with Mr. Royce by telephone.  See, Appendix B.  Mr. Royce denied having had the prints independently evaluated.  That failure constituted ineffective assistance of counsel.  Failure of defense counsel to investgate and test the prosecution's evidence denies a criminal trial of its adversarial nature and renders the result unreliable.

Mr. Moore was denied effective assistance of counsel.  Mr. Moore's convictions should be vacated and the matter remanded for a new trial.

C · 935

II.

**ED MOORE WAS DENIED HIS RIGHT UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE HIS TRIAL ATTORNEY FAILED TO INVESTIGATE AND PRESENT EVIDENCE TO REBUT THE PROSECUTION'S THEORY OF MOTIVE FOR THE PRESENT OFFENSES, TO WIT, THAT ED MOORE WAS BROKE AND NEEDED MONEY.**

In opening statement and in closing argument, the prosecution stated that Mr. Moore's motive for the present offenses was pecuniary gain. In opening statement, the prosecutor noted that, as one who painted the victim's master bedroom, Mr. Moore learned that there were large sums of money and jewelry in a safe. (R. 1206-10) The prosecution introduced testimony to show that Mr. Moore had bounced several checks and had accounts closed at the Gary/Wheaton Bank in WHeaton and at the First Midwest Bank in Morris in the spring of 1991. (R. 1309-1326) In closing argument, the prosecutor told the jury that prior to July 7, 1991, Mr. Moore was out of money and bouncing checks. (R. 3242)

Evidence existed which, if investigated by defense counsel and introduced at trial, would have significantly blunted the evidence of motive for the offenses and the prosecution's repeated references to that purported motive in opening statement and closing argument. Ed Moore told Attorney Thomas Royce that he worked for L. Terry of Terry Builders, P.O. Box 548, Morris, IL, in the spring of 1991. Mr. Moore was paid more than $3,000 for worked performed between January and May 1991. See, Appendix A. That Mr. Moore was paid for eight days' work by Terry Builders was reflected in a police report tendered to the defense in discovery in this case. Ed Moore was also paid by others for work he performed. Ed Moore was paid by contractor Wayne Neumaier, Sr., for several painting

-25-

C.936

jobs he performed in the spring of 1991.    <u>See</u>, Appendix A.    In addition, attached to this Petition as Appendix C is an affidavit from George Day. who paid Ed Moore $1500 for work performed in June 1991.

Competent counsel would have investigated and introduced the evidence described above that would have demonstrated that Mr. Moore was employed and paid during the spring and early summer of 1991.  Mr. Moore was denied his right to effective assisatnce of counsel.  Mr. Moore's convictions should be vacated and the matter remanded for a new trial.

C . 9.77

III.

ED MOORE WAS DENIED HIS RIGHT UNDER THE SIX AND FOUR-
TEENTH AMENDMENTS TO EFFECTIVE ASSISTANCE OF COUNSEL
WHERE HIS TRIAL COUNSEL FAILED TO INVESTIGATE AND
INTRODUCE EVIDENCE THAT MR. MOORE HAD DISTRIBUTED TO
VARIOUS INDIVIDUALS AND BUSINESSES HIS BUSINESS CARDS,
WHERE THE PROSECUTION ARGUED THAT THE PRESENCE OF ONE OF
MR. MOORE'S BUSINESS CARDS NEAR THE CRIME SCENE WAS
EVIDENCE OF MR. MOORE'S GUILT.

At trial, the prosecution introduced evidence that a business card of Ed Moore was found at a residence under construction near the location where the victim's automobile had been left running. Grundy County Sheriff's Deputy Richard Close testified to having found a pink business card, marked People's Exhibit No. 60, and bearing the name of Ed Moore and E & M painting as he searched a new residence under construction that belonged to Bruce Barr. (R. 1492)

Barr testified that he was at that job site until 8 p.m. on July 6, 1991, and did not notice the pink business card on the ground there. (R. 1781) Barr denied that Mr. Moore had ever left his card with Barr, although Barr acknowledged that Ed Moore had been at that site approximately three times soliciting work as a painter and Barr had asked him for a business card. (R. 1781-83, 1790)

In closing argument, the prosecutor argued to the jury that Ed Moore left his own business card at the scene of his escape. (R. 3247) The prosecutor agiain referred to the business card near the crime scene in his rebuttal closing argument. (R. 3286)

The jury would have been told that someone other than Ed Moore could have left one of Mr. Moore's business cards near the crime scene had defense counsel introduced evidence that Mr. Moore had

distributed his business cards to numerous individuals in the area. Prior to trial, Mr. Moore informed Mr. Royce that he had left his business cards with several paint shops, including Mike's Paints in Morris, IL, and with the Color Inn paint store in Westmont, IL, two stores with which Mr. Moore did business.    See, Appendix A.    In addition, Mr. Moore left business cards with Dick Sylvester, a painter and drywaller at the Zeman residence, and with Bruce Barr. Appendix A.

Thus, there were explanations for the presence of Mr. Moore's business card at the Barr residence that were far more innocuous than the picture painted by the prosecution at trial.   Because the prejudice to Mr. Moore that came from the testimony of Deptuy Close concerning his having found Mr. Moore's business card near the crime scene would have been greatly ameliorated had defense counsel investigated these witnesses and introduced their testimony, defense counsel rendered ineffective assistance of counsel.   Mr. Moore's convictions should be vacated and the matter remanded for a new trial.

IV.

**ED MOORE WAS DENIED HIS RIGHT UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO A FAIR AND RELIABLE DEATH PENALTY HEARING WHERE THE PROSECUTION INTRODUCED IN AGGRAVATION UNCORROBORATED HEARSAY, NOW KNOWN TO BE FALSE, TO THE EFFECT THAT MR. MOORE ASSAULTED TWO CORRECTIONAL OFFICERS IN NEW YORK PRIOR TO HIS EXTRADITION TO ILLINOIS FOR THE PRESENT OFFENSES. ED MOORE WAS ALSO DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE HIS TRIAL COUNSEL FAILED TO INVESTIGATE THE NEW YORK WITNESSES TO THE INCIDENT AND INTRODUCE TESTIMONY TO SHOW THE FALSITY OF THE ASSERTION THAT MR. MOORE ATTACKED THE OFFICERS.**

Grundy County Sheriff's Deputy Terry Marketti testified that one or more correctional officers at a jail in New York told him that two correctional officers were "attacked" by Mr. Moore prior to his extradition from New York. (R. 3517, 3524) When asked what Mr. Moore had done in the purported assault, Marketti stated, "<u>I have no idea</u>." (R. 3524) The prosecutor argued this uncorroborated hearsay as a reason why the jury should impose the death penalty on Mr. Moore. (R. 3638)

In his direct appeal brief, Mr. Moore challenges the admissibility of Deputy Marketti's testimony on the ground that it is uncorroborated hearsay. As noted above, the Illinois Supreme Court has not yet ruled on Mr. Moore's direct appeal.

Mr. Moore can now show that, not only was Marketti's testimony uncorroborated and unreliable hearsay, but it was false and should have been proven false by his trial attorney.

Nadine Johnson, a legal assistant with the Legal Aid Society of New York, took a statement from Edward Moore on November 14, 1991, concerning his being beaten by New York City Correctional Officer Bennie Gong. In that statement, Mr. Moore asserted that Officer Gong was the aggressor. Mr. Moore asserts in his Affidavit

-29-

C ·930

at Appendix A that the incident occurred as he related it to Ms. Johnson on November 19, 1991, to wit, that Officer Gong was the aggressor.   At Appendix 9 & 10 are photos of the injuries to the face of Mr. Moore in that incident.   At Appendix D-8 appears a memo from New York City Department of Health's Chief of Services, Mental Health, J.B. Saoud, in which he requests an investigation into the beating of Mr. Moore and that there are more than five witnesses who contradict the officers' report of the incident.

Nadine Johnson also took a statement from Brooklyn House of Detention inmate Martin Finger on November 22, 1991, that corroborates Mr. Moore's account of the incident involving Ed Moore and Correctional Officer Gong on November 14, 1991.  See, Appendix D-6.

Defense counsel owed an duty under the Sixth and Fourteenth Amendments to investigate the prosecution's case in aggravation and to introduce evidence to rebut that aggravation.   Defense counsel obviously failed to do so here, denying Mr. Moore his right to effective assistance of counsel.   This court should vacate Mr. Moore's convictions and remand for a new trial.

V.

ED MOORE WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF
COUNSEL ON DIRECT APPEAL WHERE HIS APPELLATE COUNSEL
FAILED TO RAISE THE CLAIM THAT MR. MOORE WAS  DENIED A
FAIR TRIAL AND DUE PROCESS OF LAW WHERE THE PROSECUTOR
SPECULATED IN CLOSING ARGUMENT THAT THE VICTIM COULD NOT
IDENTIFY HER ASSAILANT BECAUSE SHE HAD BEEN BLINDFOLDED
EVEN THOUGH THAT ASSERTION WAS NOT SUPPORTED BY EVIDENCE
IN THE RECORD.

At trial, the defense presented evidence that the victim
failed to identify her assailant when she was questioned by police
and medical personnel.  See, Statement of Facts attached to this
Petition.

In closing argument, the prosecution argued that that "it's
reasonable to believe [Ed Moore} was masked."  (R. 3240)  The
proecution also speculated that Ed Moore retrieved a mask from his
apartment, which he then used to mask his identity at the crime
scene.  (R. 3243)

These arguments about the mask were unsupported by the record
and violated state law.  People v. Beier, 29 Ill.2d 511, 194 N.E.2d
280 (1963)(improper for prosecutor to argue to jury that defendant
had the presence of mind to wipe fingerprints from the murder
weapon where there was no evidence to show that the weapon had been
wiped clean).  It was error for the prosecutor to twice argue that
Mr. Moore was masked and, thus, could not be indentified by the
victim.

Mr. Moore's counsel, however, failed to raise this issue on
direct appeal.  The defendant has a right to the effective
assistance of counsel on direct appeal. Douglas v. California, 372
U.S. 353, 83 S.Ct. 814, 19 L.Ed.2d 811 (1963).  The failure of
appellate counsel to raise a meritorious claim on direct appeal has

-31-

C . 952

been held to constitute ineffective assistance of counsel.    People
v. Salazar, 162 Ill.2d 513, 643 N.E.2d 407 (1994).

Because appellate counsel failed to raise a meritorious claim
regarding the prosecutor's unsupported argument about Mr. Moore
being masked, Mr. Moore was denied his right to effective assis-
tance of counsel on appeal.  His convictions should be vacated and
the matter remanded for a new trial.

C · 038

VI.

ED MOORE WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT WHERE HE WAS ON MEDICATION, INCLUDING THE PSYCHOTROPIC DRUG LIMBITROL, PRIOR TO, AND DURING, TRIAL, AND THE TRIAL COURT FAILED TO CONDUCT A FITNESS HEARING EVEN THOUGH THE LEGISLATURE HAS DETER-MINED THAT THE ADMINISTERING OF A PSYCHOTROPIC MEDICATION TO A DEFENDANT GIVES RISE TO A BONA FIDE DOUBT AS TO FITNESS TO STAND TRIAL.

ED MOORE WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW AND HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS WHERE HE INGESTED PSYCHOTROPIC AND OTHER MEDICATIONS PRIOR TO, AND DURING, TRIAL, WHERE THE PROSECUTION FAILED TO TENDER IN DISCOV-ERY NEW YORK OR ILLINOIS JAIL OR COUNTY MEDICAL RECORDS OF SUCH MEDICATIONS BEING TAKEN BY MR. MOORE, WHERE HIS COUNSEL FAILED TO MOVE FOR A FITNESS HEARING EVEN THOUGH MR. MOORE'S TAKING SUCH MEDICATIONS GAVE RISE TO A BONA FIDE DOUBT AS TO HIS FITNESS TO STAND TRIAL, AND WHERE HIS OWN COUNSEL FAILED TO OBTAIN THOSE RECORDS.

Ed Moore reported to Michael Costello of the Grundy County Mental Health Center that he took Thorazine while awaiting extradition from a jail in New York City. See, Appendix E. Mr. Moore also claims to have taken other medications while in the New York City Jail.

In addition, Mr. Moore believes that he was on several medications, including the psychotropic drug Limbitrol, which was prescribed for him while he was incarcerated at the Grundy County Jail while awaiting trial in this case. See, Appendix A. The Physicians' Desk Reference lists Limbitrol as a psychotropic medication at p.219. Mr. Moore may have taken that psychotropic medication during his trial. Mr. Moore further believes that he was also given Ampicillin. Propoxy, and Bisacodyl while in custody in Grundy County.

The Illinois Supreme Court, in interpreting, 725 ILCS 5/104-21(a) has determined that the Illinois Legislature has equated the

-33-

C. 934

administering of psychotropic medication to a defendant in close temporal proximity to his trial with a _bona_ _fide_ doubt as to his fitness to stand trial.    People v. Gevas, Ill.S.Ct. No. 75604, slip opinion of June 22, 1995 at p.7.  Mr. Moore should have been given a fitness hearing.  The failure to conduct a fitness hearing deprived Mr. Moore of due process.

Mr. Moore believes that the prosecution never tendered to his counsel in discovery the various jail medical and mental health records that would have reflected Mr. Moore's taking Limbitrol and the other medications.  This also violated due process, as those records were relevant both to trial and the capital sentencing hearing.  That counsel was without such records in defending the case at trial and at the capital sentencing hearing denied Mr. Moore effective assistance of counsel.

If the prosecution were somehow absolved from having to tender such records as Brady material, Mr. Moore's trial counsel was ineffective for failing to obtain those records, requesting a fitness hearing, and utilizing those records in the preparation of Mr. Moore's defense or in defending him at the capital sentencing hearing.  The psychotropic medication might even have caused Mr. Moore to have absented himself from the capital sentencing hearing, to his great prejudice.

C. 035

## MOTION FOR THE APPOINTMENT OF COUNSEL

Petitioner requests the appointment of counsel pursuant to 725 ILCS 5/122-2.1.  Petitioner is under a sentence of death, is without counsel, and is without sufficient means to procure counsel to represent him in this matter.  Under the Post-Conviction Hearing Act and the Illinois Supreme Court's decision in People v. Brisbon, 164 Ill.2d 236, 647 N.E.2d 935, 938 (1995), Petitioner is entitled to the appointment of counsel to assist him in this matter.

C. 933

## CONCLUSION

WHEREFORE, Petitioner Edward A. Moore, Jr. respectfully requests:

A.    That counsel be appointed to represent him in these proceedings, who will, in accordance with Supreme Court Rule 651, consult with Petitioner, examine the record of proceedings at Petitioner's trial and sentencing hearing, and make any nedcessary amendments to the Petition; and,

B.    That Petitioner be granted relief from his convictions and death sentence in this case.

### AFFIDAVIT

I, EDWARD A. MOORE, JR., state the following to be true to the best of my knowledge and belief:

1.     I am the Petitioner in the present Petition for Post-Conviction Relief.  I was the defendant in <u>People v. Moore</u>, Grundy County No. 91-CF-54.

2.     Although I requested that my trial attorney, Mr. Thomas Royce, obtain an independent analysis of the fingerprints found on the tag attached to the key ring in the victim's automobile and on the duct tape removed from the victim's head at the hospital, he never did so.

3.     Prior to trial, I told Thomas Royce that I had received income from various sources in the spring of 1991.  The following are the dates I was paid for work performed for L.Terry of Terry Builders, P.O. Box 548, Morris, IL  60450, and the amounts I was paid:

| | |
|---|---|
| 1-18-91 | $1,100 |
| 1-31-91 | $300 |
| 3-1-91 | $175 |
| 3-16-91 | $1,050 |
| 3-28-91 | $175 |
| 4-8-91 | $100 |
| 4-11-91 | $385 |
| 4-11-91 | $345 |

I also received $1500 for work I performed for George Day in Bolingbrook, IL.  I was paid for work performed for Wayne Neumaier, Sr., a contractor at 10346 Stuenkel Road, Frankfort, IL, 60423, although I cannot recall how much Mr. Neumaier paid me.

4.     Prior to trial, I informed my trial attorney, Mr. Royce, that I had distributed my business cards to several area paint stores with which I did business, including Mike's Paints, Morris,

IL, and Color Inn, Westmont, IL.  I also left business cards with Bruce Barr, a witness in this case, and with Dick Sylvester, who had done painting and drywalling at the Zeman residence.

5.    I was beaten by New York Correctional Officer Bennie Gong consistent with the account that I gave on November 19, 1991, to Legal Aid Society legal assistant Nadine Johnson. <u>See</u>, Appendix D. The photographs at Appendix D-9 & 10 accurately show the injuries to my face from my being beaten by Officer Gong.

6.    I took Thorazine, which I received from another New York jail inmate prior to my being extradited to Illinois to face the present charges.    Other medication was prescribed for me and ingested by me in the New York City Jail.

In the Grundy County Jail, I believe that I was prescribed Limbitrol, which I took while incarcerated there.    I further believe that other medications were prescribed for me, including Bisacodyl, Propoxy, and Ampicillin.    I do not recall my attorney receiving in discovery any medical or mental health records from New York or Illinois that detailed jail medical personnel administering psychotropic and other medications to me or my ingesting any medications while in jail.

A-2

C . 039

**FURTHER AFFIANT SAYETH NOT.**

_Edward A. Moore Jr_
Edward A. Moore, Jr.
Reg. No. A-70777
Box 711
Menard, IL  62259

Subscribed and Sworn to
before me on this 28th day
of June, 1995.

_Sheila Ann Hustava_
Notary Public

```
OFFICIAL SEAL
SHEILA ANN HUSTAVA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12-17-98
```

## AFFIDAVIT

I, TIMOTHY M. GABRIELSEN, state the following to be true to the best of my knowledge and belief:

1.    I am an attorney employed by the Office of the State Appellate Defender.  I am licensed to practice law in the State of Illinois.  I represent Edward A. Moore, Jr., in the direct appeal of his Grundy County case for which he was sentenced to death.

2.    On June 26, 1995, I spoke by telephone with Thomas Royce, Ed Moore's trial attorney.  Mr. Royce informed me that he never submitted any fingerprints in this case to any independent finger-print examiner for analysis.

FURTHER AFFIANT SAYETH NOT

Timothy M. Gabrielsen
Assistant Defender
Office of the State
  Appellate Defender
400 South Ninth Street, Ste. 101
P.O. Box 5720
Springfield, IL 62705-5720

Subscribed and Sworn to
before me on this 27th day
of June, 1995.

Notary Public

OFFICIAL SEAL
SHEILA ANN HUSTAVA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12-17-98

B
C. 911